CHANCERY.          Dickerson's Heirs and Administrator
                          *against* Morgan's Executor.

[Mr. Robert Wickliffe for plaintiffs: no appearance for defendant.]

FROM THE CIRCUIT COURT FOR BOURBON COUNTY.

*April* 11.          Judge EWING delivered the opinion of the Court.

A judg't was re-covered (in 1796) for $2000; $800 of it was paid: the residue enjoined (in 1800.) In 1808, a decree was rendered per petuating the injunction, & compelling the pltf. in the judg't to pay back the $800 —most of which was made, by executions on that decree; which, however, was afterwards reversed, and, finally, (in 1835,) by the decree now revised and affirmed, *the judg't was credited by the* $800, and the injunction dissolved as to the residue with damages, &c.—upon the reversal of the former decree (of 1808,) the plaintiff, it is admitted, *was entitled to restitution* of so much of the $800 as had been collected of him. But, because it does not appear that restitution had not been made; & no motion for res titution appears in the record, & there is nothing in the pleadings and issue in relation to it—it is decided that the

WE perceive no error in the decree of the Circuit Court. The bill charges that eight hundred dollars had been paid, and credited on the judgment enjoined, before the injunction was obtained, and the answers do not controvert the fact. The injunction, in fact, only restrained the collection of the balance—which was twelve hundred dollars; nor did it seek to restrain more. If it had, it clearly appears from the bill and answers, that the amount of eight hundred dollars had been paid; and of course, for that amount, it should not have been dissolved.

But it appears that, in the progress of this case, at the June term, 1808, the Circuit Court decreed a perpetuation of the injunction, and that Dickerson should pay back to Morgan, the sum of eight hundred dollars, which had been paid on the judgment at law, with interest, and that by executions issued on the latter branch of this decree, the sheriff made out of Dickerson, five hundred and fifty four dollars, paid April the 28th, 1809, and one hundred and twenty, paid the 16th day of June, 1809; also, his own commission thereon.

And upon a subsequent execution, which issued for the balance, the sheriff returned "stayed by supersedeas." And afterwards, the decree of the Circuit Court was reversed, by this Court, and the cause remanded for further proceedings. Whether the sums so collected were ever repaid by Morgan, does not appear.

That he was bound to refund, upon the reversal of the decree, is clear, and may have done so, for ought that appears to this Court. But whether he has or has

not, as no suggestion is made in the pleadings or issue formed with respect to it, or motion made for restitution, this Court can make no decree or order with respect to it in the present state of the record; nor was the Circuit Court bound to make any. It has, therefore, committed no error by failing to notice this matter.

The decree of the Circuit Court is therefore affirmed, with costs.

Spring Term<br>1839.<br><br>*Dickerson's*<br>*Heirs &c.*<br>vs<br>*Morgan's Ex'or.*<br>Court was not<br>bound to notice<br>it, & the decree,<br>as above, is affirmed.

PETITION FOR A RE-HEARING.

[By Mr. Robert Wickliffe, sen.]

*April* 29.

*To the Judges:*

R. WICKLIFFE, attorney for the heirs of Dickerson, asks the Court for a re-hearing of the case of his clients and J. Morgan, administrator &c.

He would first suggest that the opinion of the Court is founded in partial error, in supposing that the Judge of the inferior Court has done no injury to his clients. Had that decree been silent, it would have been erroneous, as the opinion of this Court had reversed the final decree of the District Court, making the injunction perpetual, simply saying the final decree of the Court for the eight hundred dollars was erroneous, and sending the cause back, to have the former decree carried into effect. It was the bounded duty of the Court to have ordered the decree of the District or Circuit Court, decreeing the judgment, to be rescinded, and the money to be repaid. But be this as it may—the decree, instead of leaving the party aggrieved to his remedy, expressly decrees that the judgment shall be credited with the eight hundred dollars, when, so far as the case is before the Court, not a dollar of it is due and unpaid by Dickerson. What was not paid was replevied, and that bond paid the decree, and ought to have been presumed to have been paid. It is most iniquitous to dock the judgment, or the claim eight hundred dollars, when the papers showed a payment of part, to wit, $——— and a replevin of the balance. This is admitted by this Court;

but the Court say that the Judge could do nothing else, on the papers. The papers showed that, on a decree of the inferior Court and execution, the payment was complete when the cause went back, to try the question whether the contract should be specifically carried into effect, and the judgment cancelled, or enjoined altogether. Until this was finally acted on, the Court very properly let the money lie where it was. Morgan claimed to pay nothing. But Dickerson, before the final decree, had got part. Morgan had got it back, and the parties were in *status ante bellum,* and hence no order to return was made on Morgan; the decree placed him in possession of his own funds, and had the final decree been silent, he and his security on his first bond were liable for the amount of eight hundred dollars, or the judge at law might have interfered, or suit might relieve Dickerson. When the inferior Court decreed, most erroneously, the entire credit of eight hundred dollars, thereby cutting off every possible remedy for that amount of the judgment: this Court have overlooked this fact; and great injustice done to Dickerson.

This $800 now amounts to £800—not one cent of which has been paid, and every dollar of which is decreed to Morgan. Nor will it do to say that the decree confines the credit to the judgment; it is decreed as a credit, and the decree is conclusive, however erroneous, until set aside.

The bill shows that there were two original bills filed—one in the Quarter Session and one in the District Court. Dickerson, in his answer, makes this suit &c. a part of his answer. The Quarter Session suit was, it seems, afterwards dismissed; but the proceedings in the District Court are and were a part of the papers. Now, only perceive how this erroneous decree affects Dickerson. On the dissolution of the first injunction, his claim for the whole judgment was valid against Morgan's security. But, by the decree complained of, this credit is confirmed, and both Morgan and his securities forever released. Nor can this Court presume payment. Morgan was not bound to pay until ordered to do so, and as the money was first taken from him, a mere reversal, however

formal, without an order to return, gives no ground to presume re-payment, or rather double payment.

But the cross bill was pending, and no disposition of that by the decree. But a cross bill or motion was unnecessary: it was the duty of the Judge to rescind, as well as to make, all orders, according to equity. The order to repay was hasty, and improperly carried into execution, and should have been set aside, instead of a decree affirming the re-payment.

Without a reversal of the decree, which improperly decrees the credit, it is, as before stated, impossible for the heirs or administrator of Dickerson ever to have justice. Wherefore a re-hearing is prayed for.

*R. Wickliffe.*

*Spring Term 1839.*

The petition was overruled, without a response.

